# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ESTEBAN MONTANO, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 97 C 8035 |
| | ) |
| THE CITY OF CHICAGO, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the Court on Defendant Christine LaFrancis' ("LaFrancis"), Jesse Atilano's ("Atilano"), Richard Toolis' ("Toolis"), and John Zalewski's motion for summary judgment and on Defendants' motion to dismiss and motion for attorney fees. For the reasons stated below, we grant Defendants' motion to dismiss, deny Defendants' motion for attorneys' fees, and deny Defendants' motion for summary judgment as moot.

## BACKGROUND

On September 14, 1997, a Mexican Independence Day parade took place on

1

26th Street in Chicago, Illinois. The parade finished in the afternoon and people continued to celebrate in the parade area into the evening. Officers Atilano and LaFrancis drove through the parade area around 8:00 p.m. and claim that they noticed a large crowd on the corner of 25th Street and Whipple. The officers claim that as they passed the corner in their car they heard the sound of glass breaking near their car and vulgar language directed towards them. The officers claim that they turned their vehicle around to investigate further and the individuals on the corner began to scatter and run. The officers were able to apprehend five of the individuals that were on the corner who are the Plaintiffs in this action. According to the officers, they told Plaintiffs to place their hands on the police car and four of the five individuals were still holding beer bottles and needed to first set down the beer bottles. The officers claim that during a pat down of Plaintiff Esteban Montano ("Montano") a scuffle ensued. Montana contends that excessive force was used and that he was hit in the head and back with a metal flashlight. The other Plaintiffs allegedly interfered with the arrest of Montano and all Plaintiffs were ultimately arrested.

Plaintiffs brought the instant action alleging various federal civil rights claims and state law claims. On September 25, 2001, the prior judge in this action granted summary judgment on some of Defendants' claims. The court also decided at that juncture to *sua sponte* relinquish its supplemental jurisdiction over Plaintiffs' state law claims and dismissed the claims without prejudice despite the fact that federal

claims remained in the action. Plaintiffs then filed the state law claims in state court. The action proceeded to trial on the remaining federal claims and, after Plaintiffs presented their case-in-chief, the district court entered judgment in Defendants' favor on all of the remaining claims except for two federal claims which were the excessive force claim by Montano against Officer Lopez in his individual capacity and Mendez's claim against Defendant Officer Lambert alleging an illegal strip search. The court then declared a mistrial on those two remaining federal claims.

On November 27, 2001, before the remaining two claims were retried, the court denied Plaintiffs' motion to reconsider the dismissal of the state law claims and the court entered an order staying the action in regards to the two remaining federal claims, until the related state court action was resolved. On March 19, 2002, the court entered an order dismissing the remaining two federal claims without prejudice, pending the outcome of the state-court proceedings. Plaintiffs appealed the district court's rulings and the Seventh Circuit held that the district court erred in dismissing the remaining two federal claims without prejudice and abused its discretion in relinquishing its supplemental jurisdiction over the state law claims. On July 13, 2004, the Seventh Circuit vacated the district court's rulings issued on September 25, 2001, and March 19, 2002. This action was then reassigned to the undersigned judge in March 2005. Thus, the claims that are alive in this action are the federal claims which include the excessive force claim by Montano against Officer Lopez in his individual capacity and Mendez's claim against Defendant

Officer Lambert alleging an illegal strip search, and the state law claims. Defendants now move for summary judgment on the state law claims and move to dismiss the entire action as a sanction for alleged perjured testimony by Plaintiffs and other misconduct by Plaintiffs' counsel.

**LEGAL STANDARD**

A district court has an inherent power to sanction litigants for an abuse of the judicial process before the court. *Kovilic Const. Co., Inc. v. Missbrenner*, 106 F.3d 768, 772 (7th Cir. 1997). Generally, a court may dismiss a case as a sanction when one of the parties has engaged in "bad faith, fraud, or undue delay . . . ." *Id.* ; *see also Allen v. Chicago Transit Authority*, 317 F.3d 696, 703 (7th Cir. 2003)(stating that "[i]n general the severity of a sanction should be proportioned to the gravity of the offense").

**DISCUSSION**

In the instant action, Defendants argue that Plaintiffs committed perjury during the trial in this action and that Plaintiffs' counsel engaged in misconduct at trial that warrants a dismissal of this action.

<u>I. Perjury at Trial</u>

Defendants contend that Plaintiffs committed perjury during the trial in this

action. If a party commits perjury during his trial testimony he commits a "fraud on the court, and it is arguable that a litigant who defrauds the court should not be permitted to continue to press his case." *Allen*, 317 F.3d at 703(stating that a court should determine if the perjury was harmless). In the instant action, Defendants have pointed to many instances where Plaintiffs committed perjury during the trial before the judge declared a mistrial.

For instance, at trial Plaintiff Ricardo Ruiz ("Ruiz") testified on direct examination that after the altercation at the squad car, he saw Montano being beaten by "a lot of police officers." (Tr 224). However, Ruiz was impeached on cross examination with his deposition testimony during which Ruiz stated that he did not see any police officer do anything to Montano after the scuffle at the squad car. (Tr 332). Ruiz also testified on direct examination at trial that he saw Defendant Nathan Lopez strike Montano outside the paddy wagon when he exited the paddy wagon. (Tr 234) However, Ruiz was then impeached on cross examination with his deposition testimony during which he had testified contrary to the above testimony and had indicated that he did not see any of the Plaintiffs being struck by a police officer during the time in question. (Tr 353).

At trial, Montano testified on direct examination that Atilano struck him in the head and on his back with a flashlight. (Tr 477-78). However, on cross examination Montano was impeached with his deposition testimony during which he indicated that Atilano was merely "trying to" hit him in the face after he was hit in

5

the back, but did not actually hit him in the face. (Tr 511-12). Montano also testified on direct examination that the did not punch an officer before he was allegedly hit in the head with the flashlight. (Tr 400). However, Montano subsequently testified that he was being held by his neck and armpit and that his hands began to accidently move in motion and came into contact with an officer. (Tr 401-02). Also on cross examination after being confronted with the video tape of the incident ("Video"), Montano admitted to punching an officer in the face. (Tr 530-31).

Plaintiff Julio Perales ("Perales") testified that he saw officers stomping on Ruiz after Ruiz was allegedly pushed to the ground. (Tr 598-99). However, on cross examination Perales was impeached with his deposition testimony during which he was asked: "Other than being pushed to the ground, did you see anything else done to Ricardo?" and Perales replied: "No." (Tr 640-41). Perales also testified at trial that he was searched at the police station and was forced to drop his pants and underwear during the search and which caused him to suffer extreme embarrassment and humiliation. (Tr 613-15). However, on cross examination Perales was impeached by his deposition testimony. During Perales' deposition testimony he testified first that he did not remember if he was searched at the police station and then later testified during his deposition that he was not searched at the police station. (Tr 643-44).

At trial, Montano testified that he was placed in a room with Plaintiff David

Mendez ("Mendez") and that Montano was then removed, physically abused, and then returned to the room with Mendez. At trial Mendez testified that when Montano was returned to the room that Mendez did not pay attention to Montana and did not look at Montano. (Tr 746). However, on cross examination Mendez was impeached with deposition testimony during which he stated that he did look at Montano when he returned to room and that he did not notice anything different about Montano. (Tr 748-49). These are some of the examples of testimony at trial that was exposed as being perjured testimony. There was not simply an isolated instance of perjury, but rather there was a coordinated effort by Plaintiffs to present a false version of the events in question to support their case. In fact at trial Mendez admitted on the stand that he, Montano, Ruiz and Perales had met and discussed the events of September 14, 1997 on more than ten occasions prior to the trial. (Tr 731). The perjury committed by Plaintiffs occurred in regards to key issues and its impact upon the jury clearly was not harmless. Plaintiffs' false testimony could have been sufficient to enable them to prevail and a drastic sanction is thus warranted in this instance.

II. Misconduct by Plaintiffs' Counsel

Defendants also point to two instances of misconduct by Plaintiffs' counsel during the trial before a mistrial was declared. Prior to the beginning of the trial, the judge ruled that Plaintiffs could not mention the Video in their opening statement,

but that Plaintiffs could move to admit the Video into evidence during the trial. (Tr 68-69). Despite the judge's ruling, Plaintiffs' counsel specifically referred to the Video during his opening statement, stating that the jury would only get to see the Video if the judge allowed the jury to see the Video and that "hopefully" they would get to see the Video because it would contradict testimony by Defendants. (Tr 96-97). Defendants correctly point out that not only did Plaintiffs' counsel violate the judge's order prohibiting the mention of the Video during his opening statement, Plaintiffs' counsel made it impossible to object to the admission of the Video at trial without looking as though Defendants were concealing incriminating evidence.

In addition, during the trial Plaintiffs' counsel attempted to introduce into evidence an arrest report and Defendants raised an evidentiary objection. In a discussion that then occurred before the jury, Plaintiffs' counsel accused defense counsel of "disparately" trying to keep the report from the jury. (Tr 872). Subsequently, during a cross examination by Plaintiffs' counsel, Plaintiffs' counsel accused the witness of being counseled by his lawyer during a break in a deposition to amend his deposition testimony in order to impress the jury. (Tr 888). Plaintiffs' counsel had no basis for such an accusation and the judge admonished Plaintiffs' counsel for making such an inflammatory statement without a proper basis.

Thus, the record of the trial shows not one isolated instance of misconduct by Plaintiffs and their counsel. Rather, the record shows a pattern of perjury and misconduct by Plaintiffs and more than one incident of misconduct by Plaintiffs'

counsel that ultimately resulted in a mistrial. A drastic sanction is warranted in this instance because if Plaintiffs' fraud upon the court were successful it would have had a tremendous impact on the trial and ultimately on the lives of the Defendant officers that stood accused of wrongdoing. We conclude that a dismissal, although drastic, is warranted in this case. Any lesser sanction would not suffice in light of the extreme misconduct by Plaintiffs and other incidents of misconduct by their counsel. We therefore grant Defendants' motion to dismiss.

III. Attorney's Fees

Defendants also move to recover attorneys' fees from Plaintiffs' counsel pursuant to 28 U.S.C.A. § 1927 ("Section 1927") which provides the following: "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Section 1927 is only applicable if counsel "engaged in serious and studied disregard for the orderly process of justice" and Section 1927 "provides a remedy for bad faith misconduct by an attorney in the pursuit of a case in court." *Bender v. Freed*, 436 F.3d 747, 751 (7th Cir. 2006).

In the instant action, although Plaintiffs' counsel made inappropriate statements before the jury and failed to follow the court's order concerning the

mention of the Video in the opening statement, which was highly prejudicial to Defendants, there is not sufficient evidence to conclude that Plaintiffs' counsel acted in bad faith or made a concerted and continued effort to engage in misconduct at trial. Defendants argue that since Plaintiffs' counsel prepared Plaintiffs for trial, Plaintiffs' counsel must have known that Plaintiffs were going to commit perjury. We do not agree that there is sufficient evidence that shows that Plaintiffs' counsel was aware that Plaintiffs were going to commit perjury. Plaintiffs' counsel, although guilty of some misconduct at trial, cannot be held accountable for the perjury committed by Plaintiffs at trial. Therefore, we deny Defendants' motion for attorneys' fees.

## CONCLUSION

Based on the foregoing analysis, we grant Defendants' motion to dismiss, deny Defendants' motion for attorneys' fees, and deny Defendants' motion for summary judgment as moot.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: March 21, 2006