IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ESTEBAN MONTANO, DAVID MENDEZ, | ) | |
| YESENIA MENDEZ, JULIO PERALES, and | ) | |
| RICARDO RUIZ, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 97 C 8035 |
| | ) | |
| JESSE ATILANO, CHRISTINE LAFRANCIS, | ) | |
| FAITH LAMBERT, NATHAN LOPEZ, | ) | |
| KENNETH MADUZIA, and RICHARD | ) | |
| TOOLIS, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

On November 19, 1997, several plaintiffs including Esteban Montaño, David Mendez,

Yesenia Mendez, Julio Perales, and Ricardo Ruiz (collectively "Plaintiffs"), initiated this civil

rights action against the City of Chicago and certain officers of the Chicago Police Department,

including Jesse Atilano, Christine LaFrancis, Faith Lambert, Nathan Lopez, Kenneth Maduzia,

and Richard Toolis, asserting various claims, including 42 U.S.C. § 1983 false arrest,

unreasonable search, and excessive force claims, based on an incident occurring on September

14, 1996. This case has a protracted history in the federal courts, including three appeals to the

Seventh Circuit. The extensive procedural history is set forth in *Montaño v. City of Chicago*,

535 F.3d 558 (7th Cir. 2008). After the retirement of U.S. District Judge Wayne Anderson, the

case was reassigned to this court on October 29, 2010, and set for a jury trial on Montaño's,

David Mendez's, Yesenia Mendez's, Perales's, and Ruiz's claims against Officers Atilano,

LaFrancis, Lambert, Lopez, Maduzia, and Toolis.

That jury trial commenced April 25, 2011 and concluded with the jury's verdict on May 9, 2011. The jury found in favor of plaintiff Montaño on his claim for false arrest under the Fourth Amendment against Officers Atilano and LaFrancis. The jury also found in favor of Montaño on his claim of excessive force under the Fourth Amendment against Officers Atilano, Lopez, and Toolis, and his claim for malicious prosecution against Officers Atilano and LaFrancis. On Montaño's Fourth Amendment unreasonable search claim against Officer Maduzia, the jury found Officer Maduzia not liable. The jury awarded Montaño $100,000 in compensatory damages and $17,000 in punitive damages, which consisted of $5,000 in punitive damages against Officer Atilano; $2,000 in punitive damages against Officer LaFrancis; $5,000 in punitive damages against Officer Lopez; and $5,000 in punitive damages against Officer Toolis.

The jury found in favor of plaintiff David Mendez on his claim of excessive force under the Fourth Amendment against Officer Lopez and awarded Mendez $15,000 in compensatory damages and $2,000 in punitive damages against Officer Lopez.

On Ruiz's, Yesenia Mendez's, and Perales's Fourth Amendment unreasonable search claims and Ruiz's Fourth Amendment excessive force claim, the jury found that the accused officers were not liable.

Defendants Atilano, LaFrancis, Lopez, and Toolis (collectively "Defendants") have filed a "Motion for New Trial on Damages or in the Alternative a Remittitur" (Dkt. No. 608) seeking a new trial on Montaño's and David Mendez's compensatory damages award or, in the alternative, a remittitur. Additionally, Defendants argue that they are entitled to either judgment

or a new trial on Montaño's and David Mendez's punitive damages award.  For the reasons explained below, Defendants' motion is denied.

BACKGROUND[1]

I.    Background Relevant to Montaño's Damages

In the evening of September 14, 1997, several Chicago Police Officers, including Defendants, were on patrol and stopped at the corner of 25th Street and Whipple in Chicago where Plaintiffs were outside celebrating Mexican Independence Day.  Officer Atilano told plaintiffs Montaño, Ruiz, and Perales to put their hands on the squad car and then proceeded to conduct pat downs of Montaño, Ruiz, and Perales.  At trial, Montaño testified that during the pat down he felt pain in his testicles, and turned around and asked Officer Atilano, "Why did you hit me?"  At that point, according to Montaño's trial testimony, Officer Atilano began to strike Montaño with his flashlight.  Montaño further testified that a second officer, Officer Toolis, came to Montaño's right side and hit Montaño on the neck and head with his flashlight.  Then, according to Montaño, a third officer, Officer LaFrancis, began pulling Montaño's hair. Montaño also testified that Officer Toolis began to choke him, causing Montaño to being losing consciousness.  At this time, according to Montaño, he was experiencing both fear and physical pain.  A video was played at trial depicting a portion of this incident between the officers and Montaño.  Montaño was arrested and eventually charged with disorderly conduct. According to Montaño, while he was at the police station, Officer Lopez repeatedly punched and kicked him.

---

[1]  Neither side ordered an official transcript of the trial proceedings and, consequently, in their respective filings, the parties have not provided the court with any citations to the record. The following recitation of the background of this case is based on the court's recollection of the evidence presented at trial.

After being bailed out of jail, Montaño saw Dr. Mendez, David Mendez's father, regarding the injuries Montaño had sustained. After that Montaño began taking pain killers to treat his pain. He also applied bandages to his ribs. The next day, Montaño saw his family doctor for additional treatment. Montaño also presented photographs of his injuries taken on September 15, 1997. The photographs depicted the injuries to Montaño's face, ribs, and wrists. Montaño testified that after taking the photographs, he then went to a hospital for treatment for his back, ribs, and wrists. He received pain killers and a cane and used the cane for approximately eight months. Montaño further testified that after the September 14, 1997 incident, he went to a physical therapist, who used both cooling and heating pads to work on the swelling in Montaño's back. He received this treatment for a year, starting at five days a week and then eventually reducing to three days a week. Montaño also testified that he received treatment from additional doctors, one for the pain in his back and another for the pain in his testicles. As a result of his injuries, Montaño could not return to his job. He also was unable to have intimate relations with his wife due to the injuries to his testicles and his back. Montaño additionally testified that the disorderly conduct charge was pending against him for almost a year. He had to retain counsel and went to trial, but the disorderly conduct charge against him ultimately was dropped.

II.      Background Relevant to David Mendez's Damages

David Mendez was also present at the corner of 25th Street and Whipple during the September 14, 1994 incident. At trial, Mendez testified that he was watching the altercation between Montaño and Officers Atilano, LaFrancis, and Toolis, and upon turning to leave, an officer grabbed Mendez's shirt, swung Mendez around, and knocked him to the concrete.

4

Mendez hit his knee, his chest, and his face on the ground.  At one point, an officer was standing

on Mendez's face.  Mendez then saw Officer Lopez kick him in the ribs.  Mendez was never able

to identify the two other officers who were holding him down.  During the trial, Mendez testified

that as a result of the kick to his ribs, he had rib pain for one or two months that felt like a

fracture and further stated that the experience was very traumatic.

<u>LEGAL STANDARD</u>

I.    Motion for New Trial

Under Federal Rule of Civil Procedure 59, the court can grant a motion for a new trial if

it concludes that the verdict was against the "manifest weight of the evidence."  *Mejia v. Cook

Cty*, No. 09-3540, 2011 WL 1518878, at *1 (7th Cir. Apr. 22, 2001).  In ruling on a motion for a

new trial, "the district court has the power to get a general sense of the weight of the evidence,

assessing the credibility of the witnesses and the comparative strength of the facts put forth at

trial."  *Id.*  If the court concludes, based on its review of the evidence, "that the verdict is against

the manifest weight of the evidence, a new trial is appropriate."  *Id.*  The court, however, "cannot

remove a piece of evidence from the calculus merely because the court believes it was not

credible."  *Id.* at *2.  Instead, the court "is bound to the same evidence the jury considered, and

can strike a piece of evidence from its weighing process only if 'reasonable persons could not

believe' [the evidence] because it 'contradicts indisputable physical facts or laws.'"  *Id.* at *2

(quoting *Latino v. Kaizer*, 58 F.3d 310, 315 (7th Cir. 1995)).


II.    Motion for Remittitur

The Seventh Circuit has identified three factors to be considered by a court in evaluating whether a remittitur of the jury's compensatory damages award is appropriate: "(1) whether the award is 'monstrously excessive'; (2) whether there is no rational connection between the award and the evidence; and (3) whether the award is roughly comparable to awards made in similar cases." *Thompson v. Mem'l Hosp. of Carbondale*, 625 F.3d 394, 408 (7th Cir. 2010). With respect to the relevance of comparable awards in similar cases, however, "such comparisons are rarely dispositive given the fact-specific nature of damages claims." *Hendrickson v. Cooper*, 589 F.3d 887, 892 (7th Cir. 2009).

## ANALYSIS

Defendants argue that they are entitled to a new trial on Montaño's and Mendez's compensatory damages awards or, in the alternative, a remittitur of those compensatory damages. Additionally, Defendants argue that the court should either enter judgment in their favor on Montaño's and Mendez's punitive damages award or order a new trial on those punitive damages. The court addresses each argument in turn below.

I.     Compensatory Damages

According to the Defendants, the jury's compensatory damages awards in favor of Montaño and Mendez bear no rational connection to their sustained injuries. Specifically, Defendants contend that "neither Montaño nor Mendez put in enough evidence to justify the monetary award . . . [,] and the evidence they did present was not credible." (Dkt. No. 608 ("Defs.' Mot.") at 4.) Defendants argue that they are entitled to a new trial on damages, or in the alternative, the court should reduce Montaño's $100,000 compensatory damages award to $20,000 and reduce Mendez's compensatory damages award to $3,000.

A.    Esteban Montaño

1.    Motion for New Trial

First, the court disagrees that Defendants are entitled to a new trial on Montaño's compensatory damages.  Montaño presented sufficient to support the jury's compensatory damages award such that the jury's verdict is not against the manifest weight of the evidence. Montaño testified as to the pain he experienced as a result of the September 14, 1997 incident, and explained to the jury that he almost lost consciousness from being choked by Office Toolis. Montaño further stated that he sought and received treatment from various doctors as a result of the incident and went to physical therapy for a year.  The jury watched a video of the incident from which the jury could assess the nature of the force used against Montaño.  Furthermore, Montaño presented evidence of the emotional damages he sustained as a result of the incident, including the fear he experienced and the impact his injuries had on his intimate relationship with his wife.

Although Defendants presented medical evidence and testimony regarding the extent of Montaño's injuries, the court respectfully disagrees with Defendants' contention that the "overwhelming weight of the objective medical evidence can lead only to the significantly strong inference that Montaño fabricated his claimed damages" (Dkt. No. 617 ("Defs.' Reply") at 7).  Montaño presented sufficient evidence of his injuries through his testimony, photographs of his injuries, and video of the incident, all of which the jury was entitled to credit and accord the weight that it deemed appropriated in light of all the evidence presented at the trial. Moreover, Montaño's testimony as to his injuries does not "contradict[] indisputable physical

facts or laws" such that the court could disregard this evidence in ruling on Defendants' motion. *Mejia*, 2011 WL 1518878, at *1.

Defendants' argument that Montaño's testimony as to the extent of his injuries was not credible because the jury did not find for Montaño on his unreasonable search claim is similarly unpersuasive. "[I]t was for the jury to determine which portion, if any, of this testimony is credible and what weight that testimony was to carry." *United States v. Samuels*, 521 F.3d 804, 812 (7th Cir. 2008). The court therefore disagrees with the Defendants' implication that Montaño's entire testimony as to his damages should be discounted.

The court has considered Defendants' remaining arguments for awarding a new trial and finds they similarly lack merit. Based on the above, the court finds that the evidence presented at trial is consistent with the jury's compensatory damages, and the $100,000 compensatory damages award, therefore, was not against the manifest weight of the evidence. Defendants' motion for a new trial on Montaño's compensatory damages is denied.

## 2. Motion for Remittitur

Defendants alternatively argue that the court should remit the $100,000 compensatory damages award to $20,000. Again, the court respectfully disagrees. Based on the evidence discussed above, the court does not find that the award is "monstrously excessive," or that "there is no rational connection between the award that the evidence." *Thompson*, 625 F.3d at 408. Additionally, Defendants do not appear to dispute that the damages award is in line with awards in comparable cases, informing the court in their reply brief that "the Court should mainly rely upon the simple fact that [Montaño and Mendez] did not prove their damages case," rather than upon the "comparable" cases cited by the parties. (Defs.' Reply 9.) The court nevertheless notes

that based on its review of those cited cases and their compensatory damages awards (*see* Defs.'
Mot. 8-10; Dkt. No. 611 ("Pls.' Resp.") at 15-16, 18-20), Montaño's compensatory damages
award is within the range of awards given for similar cases.

    B.    David Mendez

        1.    Motion for New Trial

Defendants also seek a new trial on David Mendez's $15,000 compensatory damages
award. Like Montaño's compensatory damages, the court similarly finds that Mendez's
damages award is not against the manifest weight of the evidence. David Mendez testified that
he saw Officer Lopez kick him in the ribs. Mendez also testified that he experienced pain in his
ribs for one to two months after the incident. He further testified that the incident was
emotionally traumatic.

The Defendants' contention that the jury improperly awarded damages based on injuries
Mendez sustained from other, unidentified officers is not persuasive. The court instructed the
jury that for each plaintiff's claims against a particular defendant, "a Plaintiff must prove by a
preponderance of the evidence that that Defendant was personally involved in the conduct that
that Plaintiff complains about against that Defendant." (Dkt. No. 606, Final Jury Instructions 4.)
Additionally, the court instructed the jury that it "may not hold a Defendant liable for what other
police officers or City employees did or did not do." (*Id.*) Regarding damages, the court further
instructed the jury that it could only award compensatory damages that were "a direct result of
Defendants' conduct." (*Id.* at 12.) The jury is presumed to have followed the court's
instructions. *United States v. Joshua*, 648 F.3d 547, 554 (7th Cir. 2011). Consequently, for the
reasons explained above, the court does not find that David Mendez's $15,000 compensatory

damages award was against the manifest weight of the evidence, and Defendants' motion for a new trial on Mendez's compensatory damages is denied.

2.     Motion for Remittitur

Alternatively, Defendants seek a remittitur of Mendez's damages award from $15,000 to $3,000.  Again, as discussed above, the evidence presented to the jury demonstrates that the $20,000 compensatory damages award is not monstrously excessive but rather is reasonably related to the evidence presented at trial.  It is also comparable to other awards in § 1983 excessive force cases cited by the parties.  (*See* Defs.' Mot. 8-10; Pls.' Resp. 15-16, 18-20.)  Consequently, Defendants' motion for a remittitur of Mendez's compensatory damages award is denied

II.     Punitive Damages

Lastly, Defendants argue that they are entitled to either judgment or a new trial on Montaño's and Mendez's punitive damages because Plaintiffs' counsel did not address punitive damages until his rebuttal closing argument, thereby waiving the right to pursue punitive damages.  According to Defendants, their counsel did not have an opportunity to discuss punitive damages in their closing arguments, and as a result, Defendants were  prejudiced.  The court respectfully disagrees.[2]

_____

[2]  In response, Plaintiffs contend that during the initial closing arguments their counsel "argued for punitive damages, but did not ask for a *specific* dollar amount."  (Pls.' Resp. 20 (emphasis in original).)  Again, Plaintiffs did not order an official transcript of the trial proceedings and subsequently have provided no citations to the record supporting their contention that their counsel addressed punitive damages in his initial closing argument. Moreover, the court has no independent recollection of whether punitive were discussed during the initial closing argument.  Consequently, for purposes of ruling on Defendants' motion, the court assumes that Plaintiffs' counsel did not address punitive damages until his rebuttal.

Defendants were on notice of Plaintiffs' intention to pursue punitive damages well before the commencement of the trial. Specifically, the parties submitted an agreed proposed jury instruction on punitive damages (Dkt. No. 573, Final Pretrial Order, Agreed Prop. Instr. No. 42), and Defendants did not object to instructing the jury on the availability of such damages. Moreover, the verdict forms provided to the jurors at the commencement of the trial all included space for the jury to award punitive damages. (Dkt. No. 532.) Again, Defendants posed no objection. At no time during the proceedings did Plaintiffs' counsel give any indication that Plaintiffs would no longer be pursuing punitive damages against the Defendants.

*Daskalea v. District of Columbia*, 227 F.3d 433, 450 (D.C. Cir. 2000), cited by Defendants, is distinguishable. In *Daskalea*, the court addressed whether a defendant was on notice that she was being sued in her individual, as opposed to official, capacity. *Id.* at 447-48. Reviewing the record in the case, the court concluded "that the course of proceedings in [the] case neither put [the defendant] on notice that she was being sued in her individual capacity, nor evidenced her understanding that her personal liability was at stake." *Id.* at 448. Accordingly, the court found that plaintiff's counsel's attempts to address the defendant's personal liability during the rebuttal closing argument "was simply too late" to raise the issue. *Id*. at 449-50. Here, in contrast, Defendants were on notice that Plaintiffs were pursuing punitive damages well before Plaintiffs' counsel's rebuttal argument. The court therefore finds that Montaño and Mendez did not waive their right to recover punitive damages against the Defendants.

## CONCLUSION

For the reasons explained above, Defendants' "Motion for New Trial on Damages of in the Alternative A Remittitur" (Dkt. No. 608) is denied in its entirety. The parties are strongly encouraged to discuss settlement of the entire case including costs and fees.

ENTER:

_____
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date:   September 29, 2011